IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PAULA ROBINSON,                          :
                                         :
        Plaintiff,                       :
                                         :
vs.                                      :        CIVIL ACTION 15-0507-M
                                         :
CAROLYN W. COLVIN,                       :
Commissioner of Social Security,         :
                                         :
        Defendant.                       :

MEMORANDUM ORDER AND OPINION

        In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),
Plaintiff seeks judicial review of an adverse social security
ruling which denied claims for disability insurance benefits and
Supplemental Security Income (hereinafter *SSI*).  The parties
filed written consent and this action has been referred to the
undersigned Magistrate Judge to conduct all proceedings and
order judgment in accordance with 28 U.S.C. § 636(c),
Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 21).
Oral argument was heard on May 23, 2016.  Upon consideration of
the administrative record, the memoranda of the parties, and
oral argument, it is **ORDERED** that the decision of the
Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the supplemental administrative hearing, Plaintiff was forty-seven years old, had completed a high school education (Tr. 789),[1] and had previous work experience as a laborer, wrapper, housekeeper, and sewing machine operator (Doc. 18). In claiming benefits, Robinson alleges disability due to hypertension, osteoarthritis of the lumbar spine, atypical chest pain, and obesity (Doc. 18).

The Plaintiff filed applications for disability insurance benefits and SSI on October 19, 2012, asserting a disability

---

[1]**Error! Main Document Only.**Plaintiff told Psychologist Jackson that she had received a Graduate Equivalency Degree (Tr. 204).

onset date of February 1, 2012 (Tr. 21, 69-72, 284-89).
Benefits were denied following a hearing by an Administrative
Law Judge (ALJ) who determined that although she could not
return to her past relevant work, Robinson was capable of
performing a full range of sedentary work (Tr. 21-32).[2]
Plaintiff requested review of the hearing decision (Tr. 16-17)
by the Appeals Council, but it was denied (Tr. 5-8).

   Plaintiff claims that the opinion of the ALJ is not
supported by substantial evidence.  Specifically, Robinson
alleges that:  (1) The ALJ did not properly consider the
opinions of her treating physician; (2) the ALJ did not properly
assess her non-exertional impairments; and (3) the Appeals
Council did not properly consider newly-submitted evidence (Doc.
14).  Defendant has responded to—and denies—these claims (Doc.
15).  The Court will now summarize the relevant evidence of
record.[3]

   On April 3, 2012, records from Franklin Primary Health
Center (hereinafter *Franklin*) show that Robinson was examined

--------

[2]The ALJ found that Robinson had engaged in substantial gainful
activity from the asserted onset date of February 1, 2012 through
January 1, 2013 and was, therefore, unable to claim disability
benefits or SSI during that period of time (Tr. 23-24).  Plaintiff has
not challenged this finding (*see* Doc. 14).
   [3]The Court will not review records pre-dating Robinson's asserted
disability onset date of February 1, 2012.

with complaints of frequent urination and hypertension; the hypertension was described as malignant (Tr. 193-95).  At the next examination, on November 30, 2012, the Examiner noted diffuse and moderate abdominal tenderness; she was referred to another doctor for feet pain (Tr. 190-92).  On December 17, Robinson was seen for tenderness in the lumbo-sacral spine and severely elevated blood pressure; Tramadol[4] was prescribed (Tr. 186-89).

On January 22, 2013, Robinson went to Mobile Infirmary ER with complaints of sharp-shooting chest pain; she reported that she had quit smoking (Tr. 152-69).  Plaintiff was discharged with a diagnosis of atypical chest pain and uncontrolled hypertension and given a prescription for Lortab.[5]

On January 30, Robinson returned to the Mobile Infirmary ER with complaints of chest and back pain; she reported smoking five packs of cigarettes a day (Tr. 170-79).  Musculoskeletal examination revealed normal range of motion (hereinafter *ROM*).  Plaintiff was diagnosed to have hypertension and given a

---

[4]*Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time." **Error! Main Document Only.***Physician's Desk Reference* 2520 (66th ed. 2012).

[5]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

prescription for Diovan.[6]

On January 30, 2013, Plaintiff went to Franklin for hypertension and chest pain for the prior two days; examination demonstrated no abdominal tenderness and normal ROM, muscle strength, and stability in all extremities with no pain (Tr. 183-85). Cardiac examination was normal. On February 1, Robinson had no chest or abdominal pain (Tr. 180-82).

On February 2, Robinson went to the ER and was admitted to Mobile Infirmary, for four nights, for complaints of intermittent squeezing and sharp chest pain and palpitations along with intermittent headaches; the previous night, she had felt lightheaded with a severe headache and numbness of the upper and lower extremities (Tr. 248-67). An echocardiogram revealed hyperdynamic left ventricular function. A chest x-ray revealed no significant change; a CT of the head/brain revealed no acute intracranial process. The discharge diagnosis was as follows: chest pain with mixed features; accelerated high blood pressure; and headache at admission that had resolved.

On March 4, at the request of the Social Security Administration, Psychologist Jennifer M. Jackson performed a mental evaluation on Robinson who said that she had been anxious

---

[6]**Error! Main Document Only.***Diovan* is used to treat hypertension.

and depressed for a year, though she had never received any
treatment (Tr. 204-06).  Plaintiff was oriented to time, place,
and person and had no signs of confusion, loose association,
tangential, or circumstantial thinking; she had limited judgment
and fair insight.  Jackson reported Robinson's activities of
daily living as follows:

> Ms. Robinson described her daily
> activities as eating three meals, watching
> television, listening to music, working
> "three days" a week, "reading a book," and
> taking a bath.
> Ms. Robinson can complete all personal
> ADL's independently.  She knows how to wash
> dishes, sweep, mop, vacuum, make a bed, and
> clean a bathroom.  Ms. Robinson said that
> she does not know how to cook.  She said
> that she knows how to do "a little" laundry.
> She knows how to drive and has a license.
> Ms. Robinson described her reading, writing,
> and arithmetic skills as "fair."  She said
> that she can count money and make change
> well enough to shop independently.  She can
> stay at home unsupervised.

(Tr. 206).  The Psychologist's impression was anxiety disorder,
but that she could be expected to have a favorable response to
treatment within six-to-twelve months; Jackson also thought that
Plaintiff would benefit from assistance in managing funds.

On March 5, 2013, Plaintiff went to Franklin for her

---

*Physician's Desk Reference* 1841-43 (52nd ed. 1998).

hypertension; blood pressure readings were better (Tr. 218-20). She had no musculoskeletal pain with full ROM; Robinson had stopped taking the Tramadol.

On March 21, 2013, Robinson went to Providence Hospital ER for back pain of three months' duration; she was told to avoid activities that exacerbated the problem and to follow up with her own physicians (Tr. 208-09).

On March 29, Plaintiff went to Franklin and complained of sharp leg pain, aggravated by walking and standing, and lower back pain; she rated her pain as ten on a ten-point scale (Tr. 215-17). Robinson admitted that she had been out of her blood pressure medication for longer than a week. The Examiner indicated that she had chronic lumbago. On April 8, Plaintiff complained of fatigue, weight loss, chest and back pain, and numbness in her extremities; she was neither anxious nor depressed (Tr. 211-14). The Examiner noted no abdominal tenderness, normal ROM, muscle strength, and stability with no pain in all extremities; Zanaflex was prescribed.[7]

On April 3, Robinson was examined by Dr. Jason H. Cole, of Cardiology Associates, for complaints of fatigue, chest pain,

---

[7]**Error! Main Document Only.**_Zanaflex_ "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity." _Physician's Desk Reference_ 3204 (52nd ed. 1998).

palpitations, and numbness of the limbs; she said she had no abdominal pain, limb swelling, muscle weakness, muscle aches, or leg pain (Tr. 242-47).  On April 9, 2013, Plaintiff underwent a stress test that was thought to be normal (Tr. 232-34).  On April 17, Robinson reported that she only experienced cardiac discomfort after she ate and had no exertional complaints; she had no chest pain, palpitations, abdominal pain, muscle weakness or pain (Tr. 227-31).  Dr. Cole found that Plaintiff could return to work without restrictions.

On April 22, Dr. Todd Volkman, Orthopaedist, examined Robinson for back pain, radiating into the right buttock and leg for which she took Lortab; she claimed level-ten pain in her back and both legs and level-eight pain in both arms (Tr. 277-83).  Plaintiff was tender over the sacroiliac regions with near full ROM, but discomfort with flexion and extension; the Doctor prescribed Mobic,[8] Zanaflex, and physical therapy.  On June 3, the Physical Therapist noted that Plaintiff had not shown any real change, but that she had shown poor initial response and had been inconsistent in attending her sessions (Tr. 275-76).

On October 23, Robinson was seen by Cardiologist Richard J.

---

[8]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed.

Chernick, after appearing at the ER and complaining of chest
pain and shortness of breath; she reported that she did not take
her medications regularly (Tr. 222-25).  A stress echocardiogram
was normal.

On January 16, 2014, Dr. Daniela Weatherly reported her
examination of Robinson as follows:

> Follow up on her back pain.  She went
> and saw Dr. Volkman and has had an abnormal
> MRI indicating herniated disc and DJD.  She
> comes here because she needs to discuss
> leave of absence and basically her pain is
> extreme and severe.  It interferes with her
> daily activities.  She is unable to drive.
> She states her daughter is driving her.  She
> is unable to cook for herself.  She is
> barely able to take a bath and dress.  Pain
> is severe in intensity and radiates towards
> her buttock.  It is associated with
> occasional muscle weakness.

(Tr. 270).  On examination, Weatherly reported that Plaintiff
had difficulty raising and laying [sic] down on the exam bed and
had positive straight leg raise.  The Doctor completed a
physical abilities and limitations form indicating that Robinson
could not work (Tr. 269).  More specifically, the Doctor said
that she could stand for fifteen minutes and sit thirty minutes
at a time; she could lift and carry as much as five pounds on a

2008).

frequent basis.  Robinson could manipulate both hands frequently but could never bend.  It was Weatherly's opinion that Plaintiff's pain was severe and that she could not cook, drive, or bathe and dress herself and that she had suffered this condition for over a year.

On January 30, 2014, Dr. Robert Lerner examined Robinson for "vague epigastric pain" and bloatedness; her medications included Ultram[9] and Flexeril[10] (Tr. 272-73).  On examination, the Doctor noted no paraspinal tenderness, but slight epigastric tenderness; he recommended a laxative.

This concludes the Court's summary of the evidence considered by the ALJ.

Plaintiff's first claim is that the ALJ did not properly consider the opinions and conclusions of her treating physician, Daniela Weatherly (Doc. 14, pp. 11-13).  The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any

---

[9] **Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

[10] **Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

10

physician when the evidence supports a contrary conclusion."
*Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[11] *see also* 20 C.F.R. § 404.1527 (2015).

As support for her argument concerning Dr. Weatherly, Robinson references a total of seven transcript pages (*see* Tr. 22, 222-24, 269, 322, 726).  The Court notes the following about these cited pages:

Tr. 22 is the second page of the ALJ's decision and does not mention Dr. Weatherly.

Tr. 222-24 show Weatherly to be the treating physician but the report was produced by Cardiologist Chernick.  In that examination, an echocardiogram was normal and Robinson admitted that she did not regularly take her medications.

Tr. 269 is the form completed by Weatherly in which she sets out Plaintiff's physical capacities.

Tr. 322 is an admission sheet from Mobile Infirmary, acknowledging that Weatherly is the doctor of record.  This page was submitted to the Appeals Council after the ALJ's decision was rendered, so is unavailable for consideration with regard to this claim as the Court can only review that evidence considered

---

[11]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

by the ALJ.  *See Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264-65 (11th Cir. 2007).  The Court further notes, as a practical matter, that the admitting diagnosis of back pain is the only evidence on the page.

Tr. 726 is a page from Mobile Infirmary acknowledging that Weatherly is the admitting physician on July 13, 2014.  This page was submitted to the Appeals Council after the ALJ's decision was rendered, so is unavailable for consideration with regard to this claim as the Court can only review that evidence considered by the ALJ.  The Court further notes, however, that the page only appears to show that Robinson had a negative urine drug screen.

The Court finds that the only cited evidence relevant to this claim is the form completed by Weatherly.  With regard to the limitations suggested there by the Doctor, the ALJ made the following findings:

> On January 16, 2014, the claimant was examined by Dr. Weatherly in a follow-up examination (Exhibit 11F).  Dr. Weatherly determined that the claimant has "back pain."  (Exhibit 11F).  On the same day, Dr. Weatherly completed and signed a medical source statement (Exhibit 11F).  Dr. Weatherly stated that the claimant could lift/carry up to five pounds frequently (Exhibit 11F).  Additionally, Dr. Weatherly stated that the claimant is unable to work

12

for any amount of time (Exhibit 11F).  Dr.
Weatherly stated that the claimant would
miss more than four working days per month
[sic] as a result of her impairment and/or
treatments (Exhibit 11F).  The undersigned
finds no weight to the conclusory opinions
of Dr. Weatherly in Exhibit 11F.  These
opinions are contradicted by the office
notes in Exhibits 13F and 10F, the
claimant's wide range of activities of daily
living (Dr. Jackson stated that the claimant
"can complete all personal ADL's
independently.  She knows how to wash
dishes, sweep, mop, vacuum, make a bed, and
clean a bathroom . . . She knows how to
drive and has a license.  Ms. Robinson
described her reading, writing, and
arithmetic skills as 'fair.'  She said that
she can count money and make change well
enough to shop independently.  She can stay
at home unsupervised." (Exhibit 6F)), and
the absence of lengthy hospitalizations.
Dr. Weatherly apparently relied quite
heavily on the subjective report of symptoms
and limitations provided by the claimant,
and seemed to uncritically accept as true
most, if not all, of what the claimant
reported.  Yet, as explained elsewhere in
this decision, there exist good reasons for
questioning the reliability of the
claimant's subjective complaints.

(Tr. 29).

The Court finds substantial support for the ALJ's

conclusions.  Dr. Weatherly's evidence consists of a single

examination and a report that Robinson is disabled.  The

evidence from that exam demonstrates Plaintiff's difficulties,

but does not support the Doctor's finding of disability.

13

Likewise, the balance of the evidence before the ALJ fails to support the extreme limitations suggested by Weatherly.  The Court further notes that the only evidence that supports the treating physician's finding of disability is Plaintiff's own statements; however, the ALJ rejected her testimony as non-credible (Tr. 28, 30), a finding gone unchallenged in this action.  Robinson's claim that the ALJ did not properly consider the conclusions of her treating physician is without merit.

Plaintiff next claims that the ALJ did not properly assess her non-exertional impairments of hypertension, atypical chest pain, osteoarthritis, and back pain.  Robinson further argues that this failure led to the ALJ's improper reliance on the Medical-Vocational Guidelines, known as the Grid (Doc. 14, pp. 6-9).

The Court notes that nonexertional impairments are limitations one suffers that cannot be measured in terms of strength.  20 C.F.R. § 404.1569a(a) (2015).  When nonexertional factors, such as pain or the effects of medications, are alleged, "the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986), *citing Cowart v. Schweiker*, 662 F.2d 731, 736

14

(11th Cir. 1981).  The Court further notes that the Eleventh Circuit Court of Appeals has held that the "grids should not be applied when the variables used did not take into account the claimant's particular limitations." *McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988) (*citing Gibson v. Heckler*, 762 F.2d 1516, 1521 (11th Cir. 1985)).  In *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996), the Court stated that "[t]he ALJ should not rely exclusively on the grids when the claimant has a nonexertional impairment that significantly limits his basic work skills or the claimant cannot perform a full range of employment at the appropriate level of exertion."  Rather, the grid should be used as a "framework to evaluate vocational factors" along with other "independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy."  *Wolfe*, 86 F.3d at 1077.

In this action, the ALJ found that Robinson had the severe impairments of hypertension, osteoarthritis of the lumbar spine, and atypical chest pain (Tr. 24).  The ALJ went on to find that she had the residual functional capacity to perform a full range of sedentary work, so was unable to perform her past relevant work.  Nevertheless, relying on Grid Rule 201.21,[12] the ALJ found

---

[12]Rule 201.21 contemplates a younger individual, with a high

that Plaintiff was capable of working and was not disabled.

The Court notes that although a Vocational Expert was present and testified at the second administrative hearing, the ALJ did not question her about Plaintiff's nonexertional impairments.  In the determination, the ALJ discussed those impairments, but noted that no medical source, other than Dr. Weatherly, had indicated any limitations for Plaintiff at all (Tr. 30).

Robinson has questioned the ALJ's reliance on Psychologist Jackson who noted her daily activities and abilities, arguing that a Psychologist "is not qualified to adequately assess the Plaintiff's daily living restrictions from a physical standpoint" (Doc. 14, p. 8; *cf.* Tr. 206).  The Court rejects this argument, noting that Jackson was only reporting Robinson's own accounting of her activities.

Plaintiff also asserted that her osteoarthritis and back pain would keep her from performing the necessary amount of sitting required for sedentary work (Doc. 14, p. 8).  As support, she pointed to medical sources telling her to limit her sitting (*see* Tr. 209, 269, 345).

The Court notes that the first and last page cited are part

_____

school education and no transferrable skills, that is capable of

of generalized instructions from Mobile Infirmary given to people claiming to have back pain (Tr. 209, 345).[13]  These suggestions are not, however, equivalent to a treating physician's instructions not to sit for prolonged periods of time.  Only one physician, Dr. Weatherly, has placed any restrictions on Robinson (Tr. 269).  However, this Court found that the ALJ properly rejected her conclusions.

The Court finds no merit in Plaintiff's argument that the ALJ did not properly evaluate her nonexertional impairments, leading to an improper reliance on the Grid.  Robinson has not demonstrated that her nonexertional impairments affect her ability to perform work.  As such, the ALJ's findings that Plaintiff could perform a full range of sedentary work and was not disabled under the Grid is not an error as those decisions are supported by substantial evidence.

Finally, Robinson asserts that the Appeals Council did not properly consider newly-submitted evidence (Doc. 14, pp. 9-10).  Following the ALJ's decision, Plaintiff submitted 456 pages of medical evidence for review by the Appeals Council (Tr. 6, 9; cf. Tr. 309-764).  In making this claim, Plaintiff points to a

---

performing sedentary work.
[13]The Court further notes that Tr. 345 is not a part of the record that the ALJ considered; likewise, this Court cannot consider it for

single page of evidence, a radiological report indicating that she had four disc bulges—two that were mild, one moderate, and one marked (Doc 14, p. 10; Tr. 313).

The Court notes that a disability claimant can present new evidence at any stage of the administrative proceedings.  20 C.F.R. ¶¶ 404.900(b) and 416.1400(b) (2015); *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1261 (11th Cir. 2007).  If the evidence is first presented to the Appeals Council, the Council considers it only if it relates "to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b) and 416.1470(b).  If the Appeals Council determines that the evidence provides no basis for changing the ALJ's decision, no further explanation is required.  *Mitchell v. Commissioner*, 771 F.3d 780, 783-85 (11th Cir. 2014).  This rule of law was reinforced in an Eleventh Circuit Court of Appeals decision that stated as follows:

> "The Appeals Council may deny or dismiss [a] request for review. . . ."  20 C.F.R. § 416.1467.  But the Appeals Council is not required to make specific findings of fact when it denies review.  It need only "consider the additional evidence" that is new, material, and chronologically relevant. *Id*. § 416.1470(b).  The Appeals Council stated that it considered the new evidence

purposes of this claim.

> that Parks submitted, and the Appeals
> Council added the evidence to the record.
> The Appeals Council was not required to do
> more.

*Parks ex rel. D.P. v. Commissioner, Social Security Administration*, 783 F.3d 847, 853 (11th Cir. 2015).[14]

In this action, the Appeals Council considered the new evidence and found that it did "not provide a basis for changing the [ALJ's] decision (Tr. 6). The evidence was added to the record (Tr. 9; *cf.* Tr. 309-764). The Appeals Council did all that it was required to do, Robinson's claim notwithstanding.

In connection with this claim, Plaintiff submitted new evidence from her treating physician, Dr. Weatherly, that reiterates her opinion that Robinson is unable to work (Doc. 14, pp. 15-18). The Court notes that the Court can consider this evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.A. § 405(g), Sentence 6.

The Court notes that the evidence does not include results from objective tests or even copies of Weatherly's medical

---

[14]The Court notes that the C.F.R. cites are for SSI claimants. Corresponding cites for disability claimants can be found at 20 C.F.R. §§ 404.967 and 404.970(b).

treatment notes; it consists of the Doctor's opinion, in several forms, that Plaintiff is disabled.  The Court finds that this evidence would not meet the requirements of a sentence six remand under 28 U.S.C. § 405(g) as Robinson has not demonstrated the materiality of the evidence or provided good cause for providing it at this late date.

Robinson has raised three different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 25th day of May, 2016.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE